FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF LA

2003 NOV -5 PM 4: 41

LORETTA G. WHYTE
CLERK

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **STANLEY R. WALDRON** | * | **CIVIL ACTION** |
| **VERSUS** | * | **NO: 03-1022** |
| **N. BURL CAIN, WARDEN** | * | **SECTION: "N"(6)** |

### REPORT AND RECOMMENDATION

This matter was referred to the United States Magistrate Judge for the purpose

of conducting a hearing, including an evidentiary hearing, if necessary, and submission of

proposed findings and recommendations for disposition pursuant to Title 28, United States

Code, Sections 636(b)(1)(B) and (C), and, as applicable, Rule 8(b) of the Rules Governing

Section 2254 cases. Upon review of the entire record, the Court has determined that this

matter can be disposed of without an evidentiary hearing.  For the reasons set forth below,

it is hereby **RECOMMENDED** that the instant habeas corpus application be **DENIED**

**WITH PREJUDICE.**

### Procedural History

On February 16, 2000, petitioner Stanley R. Waldron, a state prisoner presently

incarcerated in the Louisiana State Penitentiary, Angola, Louisiana,  was tried by a jury and

DATE OF ENTRY

NOV 6 2003

Fee_____
Process_____
Dktd_____
CtRmDep_____
Doc. No._____

DATE OF MAILING    NOV 6 2003

found guilty as charged of molestation of a juvenile recurring during a period of more than one year, in violation of La. R.S. 14:81.2(D).[1]  Waldron chose to represent himself at trial. Petitioner was sentenced on April 7, 2000, to serve fifteen years at hard labor without benefit of probation, parole, or suspension of sentence.[2]

Petitioner directly appealed his conviction and sentence to the Louisiana Court of Appeal, First Circuit which affirmed petitioner's conviction and sentence on September 28, 2001.[3]  Thereafter, on February 13, 2002, petitioner filed an application for a writ of

---

[1]See State Record, Vol. 2 of 3, pages 45 and 257, **State v. Waldron**, No. 268-835, 22nd Judicial District Court, Parish of St. Tammany, State of Louisiana.  The Bill of Information, page 45, charged that Stanley Waldron on or about January 1985 through January 1995, did violate **R.S. 14:81.2(D) MOLESTATION OF JUVENILE**, by the commission of a lewd and lascivious act with and upon a minor child under the age of 17, there being an age difference of greater than 2 years between the defendant and the juvenile, with the intent of arousing the sexual desires of either party by the use of influence by virtue of defendant's care, custody, control and supervision of the juvenile, whereby the molestation recurred during a period of more than one year.  Victim's name & DOB: Amanda McCall, 3/13/81.  The verdict form is found on page 257.

[2]See State Record, Vol. 3 of 3, Transcript of Sentencing Proceeding pages 750-751.

[3]See State Record, Vol. 1 of 3.  **State v. Waldron**, No. 2000-KA-2795 (unpublished opinion)(La. App. 1st Cir. Sept. 28, 2001).  Petitioner brought four counseled issues and five pro se issues as follows:  The counseled issues were (1) insufficient evidence to prove one of the essential elements of molestation of a juvenile; (2) trial court erred in denying the motion for post-conviction judgment of acquittal; (3) improper sentencing under La. R.S. 14:81.2(D); and, (4) improper sentencing as the court failed to wait the statutory mandated 24 hour period between denial of motion for acquittal prior to imposing a sentence.  The pro se issues were:  (1) discriminatory selection of jurors; (2) inadequate bill of information, error in jury charges, limitation on institution of prosecution; (3) insufficiency of evidence; (4) excessive sentence; and, (5) judicial vindictiveness.

certiorari in the Louisiana Supreme Court[4] which was denied on January 31, 2003.[5] Waldron

did not file an application for post-conviction relief in the state courts.

Petitioner filed his federal application for habeas corpus relief on May 2, 2003,[6]

therein raising the following issues:

> 1. Denial of due process rights to present a defense and to a fair trial under the Fifth, Sixth and Fourteenth Amendments, when the State used an audio tape recording at trial in violation of Title 18, United States Code, Section 2515.
>
> 2. Denial of due process rights to present a defense and to a fair trial when the State used an insufficient bill of information for prosecution; failed to subpoena defense witnesses; refused to allow defense to have the audio tape tested by an expert; failed to timely provide defense with a copy of the audio tape and transcript of the audio tape; failed to provide Waldron with a copy of his rap sheet; and, denied the defense the ability to impeach State witnesses.
>
> 3. Denial of due process rights to counsel and to a fair trial, when the State allowed petitioner to represent himself during trial.
>
> 4. Insufficient Evidence.

---

[4]See State Record, Vol. 1 of 3, letter dated February 13, 2002, from the Clerk of Court, Re:  2002-KH-453.  Also see copy of application for writ of certiorari.

[5]See State Record, Vol. 1 of 3.  **State ex rel. Stanley Waldron v. State of Louisiana**, No. 2002-KH-0453 (La. Jan. 31, 2003).

[6]See Fed. Record, Vol. 1 of 2, Doc. No. 2, Petition and Memorandum of Law in Support of Application for Writ of Habeas Corpus.

The Respondent filed its Memorandum in Opposition to Application for Habeas Corpus relief on June 19, 2003.[7] Respondent conceded that Waldron's federal application was timely filed and that all the issues had been exhausted in the highest state court.[8] However, respondent concluded that Waldron's petition should be dismissed with prejudice because it failed to state a claim upon which relief could be granted.[9] Petitioner filed a Traverse to the opposition to his application on July 1, 2003.[10] On July 9, 2003, petitioner filed a Supplemental Traverse to the Opposition.[11]

Review of the state record shows that petitioner has exhausted all of his issues in the highest state court. See **Rose v. Lundy**, 455 U.S. 509, 102 S.Ct. 1198, 71 L.Ed.2d 379 (1982). Further study of the State Record, the Federal Record and applicable law, indicates that petitioner's federal application was timely filed on May 2, 2003, pursuant to Title 28, United States Code, Section 2254.

### **Standard of Review**

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA")

---

[7]See Fed. Record, Vol. 2 of 2, Doc. No. 6, Memorandum in Opposition to Application for Habeas Corpus.

[8]**Ibid**, Rec. Doc. No. 6, page 6.

[9]**Ibid**, Rec. Doc. No. 6, page 14.

[10]See Fed. Record, Vol. 2 of 2, Doc. No. 9.

[11]See Fed. Record, Vol. 2 of 2, Doc. No. 10.

4

includes a comprehensive overhaul of federal habeas corpus legislation, including Title 28,

United States Code, Section 2254. Amended subsections 2254(d)(1) and (2) contain revised

standards of review for questions of fact, questions of law and mixed questions of fact and

law where there has been an adjudication on the merits in State court proceedings.

State court determinations of questions of law and mixed questions of law and

fact are reviewed under Title 28, United States Code, Section 2254(d)(1) and receive

deference unless they were "contrary to, or involved an unreasonable application of clearly

established Federal law, as determined by the Supreme Court of the United States." **Hill v.**

**Johnson**, 210 F.3d 481, 485 (5th Cir. 2000), *cert. denied*, 532 U.S. 1039, 121 S.Ct. 2001,

149 L.Ed.2d 1004 (2001). The United States Supreme Court has recently advised that:

> Under the "contrary to" clause, a federal habeas corpus court
> may grant the writ if the state court arrives at a conclusion
> opposite to that reached by this Court on a question of law or if
> the state court decides a case differently than this Court has on
> a set of materially indistinguishable facts.    Under the
> "unreasonable application" clause, a federal habeas court may
> grant the writ if the state court identifies the correct governing
> legal principle from this Court's decisions but unreasonably
> applies that principle to the facts of the prisoner's case.

**Williams v. Taylor,** 529 U.S. 362, 120 S.Ct. 1495, 1523, 146 L.Ed.2d 389 (2000); **Hill**, 210

F.3d at 485. Questions of fact found by the state court are "presumed to be correct ... and we

will give deference to the state court's decision unless it 'was based on an unreasonable

determination of the facts in light of the evidence presented in the State court proceeding.'"

**Hill,** 210 F.3d at 485, *quoting* Title 28, United States Code, Section 2254(d)(2).

### Statement of Fact[12]

The charge of molestation in this case was based on allegations made by the defendant's stepdaughter that he repeatedly molested her from the time she was five years old until she was fourteen. At trial, the state introduced the testimony of the victim, a tape-recorded phone call in which the defendant allegedly discussed with the victim's biological father his "intimate" relationship with the victim, and the testimony of the victim's father confirming the contents of the phone conversation.

The victim testified she was four years old when her mother married the defendant. Beginning when she was five years old, the defendant frequently tickled her stomach area and inner thighs. As she got older, he began to touch her genital area through her clothes. When she was eight or nine, the defendant began to touch her genitals underneath her clothes.

The victim testified the defendant's "routine" was to stay up late working at the computer until her mother fell asleep, then turn on the bathroom light across the hall from her room, enter her room, lift up the covers to see whether the victim was wearing clothes

---

[12]The Statement of Fact was taken from the unpublished opinion in **State v. Stanley Waldron**, No. 2000-KA-2795, pages 2-4, (La. App. 1st. Cir. Sept. 28, 2001) after study of the transcript and record for accuracy. A copy of the unpublished opinion is contained in Volume One of the State Record.

he could easily get into, and then climb into bed behind her. Several times, the victim woke up and discovered the defendant improperly touching her. When she started yelling at him, he always told her to calm down so she would not wake up her mother. The victim also testified the defendant told her that if she told anyone about his actions, he would leave her mother, the family would have no money, and all her brothers and sisters would have to live in foster homes.[FN1] Usually, the defendant left as soon as she woke up. The victim added that many times, she just pretended to be asleep until the defendant finished. She testified that this type of fondling happened about three nights a week and totaled more than twenty times.     [FN1] Her mother and stepfather had four children after they were married.

According to the victim's testimony, when she was ten or eleven, the defendant began to touch her with his penis. During his nighttime visits, he got in bed behind her in the spoon position while she was either sleeping or pretending to sleep. He then rubbed his penis on the backs of her upper thighs. This type of contact also occurred more than twenty times.

The victim stated that, later, when she was eleven or twelve, the defendant's contact progressed to the point where he inserted his penis inside of her vagina while he was lying behind her and kissing her neck. She testified this kind of contact also occurred around twenty times. The victim reiterated that the defendant repeatedly told her not to tell anyone or he would leave the victim's mother and her children to fend for themselves.

7

In 1995, when the victim was thirteen or fourteen years old, her mother, stepfather, and her brothers and sister moved to Florida. The victim stayed in Louisiana with her biological father for a short while and then rejoined her mother in Florida. She testified she went to Florida with the intention that she would not let the defendant do anything to her anymore. Once she arrived in Florida, the defendant tried to enter her room at night, but the victim kept her door locked.

The victim testified she finally decided to tell others what the defendant had done to her when she came home one time and heard her little sister screaming. She found the defendant and her little sister in bed together. She picked up her sister and noticed she did not have a diaper on. When the victim asked the defendant why there was no diaper, he reported there were no diapers in the house, but the victim said she saw a new pack of diapers on the dresser. Because she suspected the defendant had begun to abuse her little sister, she reported the defendant's actions to a school counselor and later to her biological father.

The victim's father, Larry McCall, testified the defendant called him at his place of employment in April of 1996 to discuss the victim's allegations. Mr. McCall worked at Lockheed Martin in the security office, where all incoming calls were routinely recorded. Mr. McCall was aware of this and had previously agreed to the recording of his calls as a condition of his employment. The state introduced a transcript of the conversation and the

8

actual recording was played for the jury. During the lengthy conversation, a person whom Mr. McCall alleged was the defendant repeatedly admitted to and discussed an "intimate relationship" with the victim, justifying it as a relationship that did not involve rape or abuse but that "met his emotional needs" and the "emotional needs" of the victim.

The defendant, who represented himself at trial, testified he never touched his stepdaughter in any improper way, nor did he call the victim's father and admit any intimate relationship with the victim. The defendant's mother testified she thought the voice on the tape "sounded somewhat" like that of her son. The defendant's father testified he could not tell if the voice he heard speaking on the tape was that of his son.

### Denial of Due Process

Petitioner claims that he was denied his due process of rights and that he was denied a fair trial as provided for by the Fifth, Sixth and Fourteenth Amendments to the United States Constitution, when the State was allowed to introduce into evidence an audio tape recording during trial, allegedly in violation of Title 18, United States Code, Section 2515.[13] Specifically, the audio tape recording was a conversation between the victim's

---

[13]Title 18, United States Code, Section 2515 provides:

**Prohibition of use as evidence of intercepted wire or oral communications**
Whenever any wire or oral communication has been intercepted, no part of the contents of such communication and no evidence derived therefrom may be received in evidence in any trial, hearing, or other proceeding in or before any court, grand jury, department, officer, agency, regulatory body, legislative committee, or other authority of the United States, a State, or a political subdivision thereof if the disclosure of that information would be in violation of

biological father, Larry McCall, and petitioner, which was recorded on the premises of the

Lockheed Martin Michoud Space Systems, a United States contracted corporation. Although

it was established that Larry McCall consented to have all of his telephone calls recorded,

in compliance with the mandates of his corporation's requirements, petitioner claims that his

constitutional rights were violated by the recording of the conversation and by the court's

admittance of the conversation and a transcript of same at the trial. Petitioner argues that

federal law, Title 18, United States Code, Section 2511(1)(b)(iv)(A),[14] prohibits the

interception of oral communications on the premises of a business that affects interstate or

foreign commerce despite the fact that there is a "business use" exception in the law.

Petitioner fails to recognize that Title 18, United States Code, Section 2511(2)(d) states:

> **(d)** It shall not be unlawful under this chapter for a person not

---

this chapter.

[14]Title 18, United States Code, Section 2511(1)(b)(iv)(A) provides in pertinent part:
**Interception and disclosure of wire, oral, or electronic communications prohibited**
(1) Except as otherwise specifically provided in this chapter any person who -
* * *
    **(b)** intentionally uses, endeavors to use, or procures any other person to use or to endeavor to use any electronic, mechanical, or other device to intercept any oral communication when -
* ** *
    **(iv)** such use or endeavor to use (A) takes place on the premises of any business or other commercial establishment the operations of which affect interstate or foreign commerce;
***
shall be punished as provided in subsection (4) or shall be subject to suit as provided in subsection (5).

10

> acting under color of law to intercept a wire, oral, or electronic communication where such person is a party to the communication or where one of the parties to the communication has given prior consent to such interception unless such communication is intercepted for the purpose of committing any criminal or tortious act in violation of the Constitution or laws of the United States or of any State.

Joseph Corona, manager of security at Lockheed Michoud Space System,[15] testified at trial that all incoming calls in the Space System's protection area are recorded as they are emergency phones. All employees working in the security division have consented to their conversations being taped as did Larry McCall.[16] Mr. Corona turned the subject tape recorded conversation over to the Slidell Police Department.[17]

Petitioner filed a motion to suppress evidence on April 21, 1999, therein alleging the following:

### II.

> At trial of this matter, defendant, on information and belief, assumes that the State will try to introduce the contents of a telephone conversation tape recorded by Larry McCall between Larry McCall and defendant Stanley R. Waldron relative to the facts in this case.

### III.

---

[15]See State Record, Vol. 3 of 3, Transcript of Trial, Feb. 15, 2000, page 536 (hereinafter referred to as T. _____).

[16]**Ibid**, T. 539

[17]**Ibid**, T. 538.

11

> Defendant, on information and belief, avers that this telephone
> conversation took place when Larry McCall worked as a
> security guard at Martin-Marietta in the state of Mississippi.

### IV.

> Defendant avers that Larry McCall used the tape recording
> equipment belonging to Martin-Marietta without permission and
> unlawfully tape recorded said conversation between the
> defendant and Larry McCall.

### V.

> Defendant further avers that on information and belief that after
> surreptitiously recording said conversation he then stole the tape
> recording and removed it from the premises at Martin-Marietta
> to later be used at the trial of this matter.

### VI.

> Defendant alleges that the tape recording was illegally obtained
> and the contents thereof should be suppressed by this Honorable
> Court.[18]

The motion to suppress was denied by the trial court. The Louisiana Court of Appeal, First

Circuit affirmed the ruling of the trial court and concluded that the admission of the taped

conversation did not violate any Louisiana statutory law. The First Circuit said, in pertinent

part:

> The Electronic Surveillance Act, La. R.S. 15:1301, et seq.,
> generally prohibits the interception and disclosure of wire or
> oral communications. However, there are exceptions to this

---

[18]See State Record, Vol. 2 of 3, pages 65-66, Motion to Suppress Evidence.

general prohibition, such as where one of the parties to the communication consents to its interception. **State v. Vince**, 98-1892, p. 4 (La. App. 1st Cir. 6/25/99), 739 So.2d 308, 310 <u>writ denied</u>, 1999-2232 (La.01/28/00), 753 So.2d 230.  Under La. R.S. 15:1303.C(4), it shall "not be unlawful ... for a person not acting under color of law to intercept a wire or oral communication where such person is a party to the communication or where one of the parties to the communication has given prior consent to such interception, unless such communication is intercepted for the purpose of committing any criminal or tortious act ... or for the purpose of committing any other injurious act."[19]

Upon review of the claim, the facts and applicable law, it is clear that petitioner's right to due process and right to a fair trial were not violated under the Fifth, Sixth and Fourteenth Amendments. Larry McCall consented to the interception and was not acting under color of law. The claim is meritless.

## Second Claim of Denial of Due Process

Petitioner claims that his due process rights to present a defense and to have a fair trial were violated by the State because it prosecuted him using an insufficient bill of information; failed to subpoena defense witnesses; refused to allow the defense to have the audio tape tested by an expert; failed to timely provide the defense with a copy of the audio tape and transcript of the audio tape; failed to provide Waldron with a copy of his rap sheet; and, denied the defense the ability to impeach State witnesses.

---

[19]See **State v. Waldron**, No. 2000-KA-2795, pages 14-15 (unpublished opinion)(La. App. 1st Cir. Sept. 28, 2001).

Insufficient Bill of Information

Waldron claims that the bill of information used to prosecute him was insufficient, as it was in violation of his Sixth Amendment right to notice of the charge. Specifically, Waldron claims that he was "prejudiced by not being fairly informed of what single lewd and lascivious act that he committed in violation of the law which denied him the ability to prepare a defense."[20] Waldron also claims that the bill of information failed to provide him with a double jeopardy defense against future prosecution.

Petitioner relies on the following language cited in **United States v. Gaytan**, 74 F.3d 535, 551 (5th Cir. 1996) in support of his claim:

> The Sixth Amendment requires that an indictment (1) enumerate prima facie element of the charged offense: (2) fairly inform the defendant of the charges filed against him; and (3) provide the defendant with a double jeopardy defense against future prosecutions. **United States v. Arlen**, 947 F.2d 139, 144 (5th Cir. 1991), cert. denied, 503 U.S. 939, 112 S.Ct. 1480, 117 L.Ed.2d 623 (1992).

(See Fed. Rec., Vol. 1, Doc. No. 2, page 7, Memorandum of Law in Support of Application for Habeas Corpus.)

The bill of information in the subject case charged, in pertinent part:

**DEFENDANT'S NAME AND DATE OF BIRTH:**
WALDRON, STANLEY, 10/15/55

---

[20]See Fed. Rec., Vol. 1, Doc. No. 2, page 8, Memorandum of Law in Support of Application of Habeas Corpus.

14

**DATE OF OFFENSE**: ON OR ABOUT JANUARY 1985
THROUGH JANUARY 1995

**R.S. 14:81.2(D) MOLESTATION OF JUVENILE,** by the
commission of a lewd and lascivious act with and upon a minor
child under the age of 17, there being an age difference of
greater than 2 years between the defendant and the juvenile,
with the intent of arousing the sexual desires of either party by
the use of influence by virtue of defendant's care, custody,
control and supervision of the juvenile, whereby the molestation
recurred during a period of more than one year. Victim's name
& DOB: Amanda McCall, 3/13/81

(See State Record, Vol. 2 of 3, page 45, Bill of Information.)

Molestation of a juvenile is defined by La. R.S. 14:81.2, in pertinent part:

A. Molestation of a juvenile is the commission by anyone over
the age of seventeen of any lewd or lascivious act upon the
person or in the presence of any child under the age of
seventeen, where there is an age difference of greater than two
years between the two persons, with the intention of arousing or
gratifying the sexual desires of either person, by the use of force,
violence, duress, menace, psychological intimidation, threat of
great bodily harm, or by the use of influence by virtue of a
position of control or supervision over the juvenile. Lack of
knowledge of the juvenile's age shall not be a defense.

. . .

D. (1) Whoever commits the crime of molestation of a juvenile
when the incidents of molestation recur during a period of more
than one year shall, on first conviction, be fined not more than
ten thousand dollars or imprisoned, with or without hard labor,
for not less than five nor more than fifteen years, or both. At
least five years of the sentence imposed shall be without benefit
of parole, probation, or suspension of sentence. After five years
of the sentence have been served, the offender, who is otherwise
eligible, may be eligible for parole if a licensed psychologist or
a licensed clinical social worker or a board-certified psychiatrist,

15

after psychological examination, including testing, approves.

Petitioner filed a Motion for Bill of Particulars, therein requesting a more specific explanation of the nature and cause of the charges against him.[21]  The State filed a response to the motion[22] on January 19, 2000, stating the following, in pertinent part:

I

Defendant, Stanley Waldron, filed a motion for Bill of Particulars which did not designate specific questions to be answered but only offered a vague request for specific nature and cause of the charges against him.  This is an improper form which has been requested of the State because it is not a specific question.

II

The offense charged is alleged to have occurred between the dates of January 1985 through January 1995.  The actions committed against the victim, started as sexual touching of her private areas and escalated to intercourse/penetration at about the age of twelve and thirteen.  The defendant is charged by the District Attorney's Office under LSA R.S. 14:81(2)(C) Molestation of a Juvenile.

The Louisiana Court of Appeal, First Circuit specifically addressed the sufficiency of the bill of information in its unpublished opinion, in pertinent part:

Article 1, Section 13 of the Louisiana Constitution provides that in a criminal prosecution, an accused shall be informed of the

---

[21]See State Record, Vol. 2 of 3, page 98.

[22]See State Record, Vol. 2 of 3, page 201.

16

> nature and cause of the accusation against him. Herein, the bill
> of information, in addition to giving the name and date of birth
> of the victim, provided that the defendant, born on October 15,
> 1955, violated:
>
> [La.]R.S. 14:81.2(D) MOLESTATION OF A JUVENILE ....

(See **State v. Waldron**, No. 2000-KA-2795, pages 12-13 (unpublished opinion)(La. App. 1st Cir., Sept. 28, 2001). A copy of the opinion is contained in the State Record, Vol. 1 of 3.)

The First Circuit restated the State's Response to petitioner's Bill of Particulars

and concluded:

> The foregoing adequately conveyed to the defendant the nature
> and cause of the charge against him. This part of the assignment
> of error lacks merit.

(See **State v. Waldron**, No. 200-KA-2795, page 13.)

The Louisiana Court of Appeal, First Circuit, also addressed the issue of the

sufficiency of the bill of information in the content of improper sentencing as follows, in

pertinent part:

> ... a review of the bill of information reveals the defendant
> herein was charged with violating "R.S. 14:81.2(D)
> MOLESTATION OF A JUVENILE, ... whereby the molestation
> recurred during a period of more the (sic) one year." As such,
> the defendant cannot complain he was not properly informed of
> the nature of the and cause of the accusation against him, a right
> guaranteed him by Article 1, Section 13 of the Louisiana
> Constitution. Moreover, the inclusion of the recurring acts
> element in the bill of information was of sufficient particularity
> "to enable the defendant to prepare for trial, to allow the court
> to determine the propriety of the evidence that is submitted at
> the trial, to allow the court to impose the correct punishment on

17

> a verdict of guilty, and ... to afford the defendant protection
> from prosecutions for the same offense." **LeCompte**, 98-1159
> at p. 9, 734 So.2d at 88.

See **State v. Waldron**, No. 2000-KA-2795, pages 7-8 (unpublished opinion). A copy of the

unpublished opinion is contained in the State Record, Vol. 1 of 3. The Louisiana Supreme

Court upheld the First Circuit's decision when it denied petitioner's direct appeal.

The rule in our circuit is that "[w]hen it appears ... that the sufficiency of the

indictment was squarely presented to the highest court of the state on appeal, and the court

held that the trial court had jurisdiction over the case, the issue is foreclosed to a federal

habeas court." **Murphy v. Beto**, 416 F.2d 98, 100 (5th Cir.1969). See also **Alexander v.**

**McCotter**, 775 F.2d 595, 598 (5th Cir.1985) ("[T]he sufficiency of a state indictment is not

a matter for federal habeas corpus review unless it can be shown that the indictment is so

defective that the convicting court had no jurisdiction.").

Having reviewed the Louisiana Court of Appeal, First Circuit's decision on

petitioner's challenges to the bill of information as well as the state record, it is clear that

Waldron was informed of the nature of the charges against him and therefore is not entitled

to habeas relief on his claims.

Subpoena of Defense Witnesses and Documents

Petitioner claims that he was prejudiced during his trial because the State

denied him compulsory process by failing to subpoena the following witnesses:  Joseph

Corona, Detective John Emery, Larry McCall, David Coleman, Thomas Fierke, Brian

Silversten and Anita C. Waldron. The State responded that petitioner's claim is meritless

because petitioner failed to make objections that he was unable to secure the presence of

Anita Waldron, David Coleman and Brian Silversten, whom he calls "crucial" witnesses.

Moreover, the State argues that petitioner's claim is meritless as to John Emery, Joseph

Corona and Larry McCall as these individuals testified at the trial.

The Louisiana Court of Appeal, First Circuit attempted to review petitioner's

claim of denial of compulsory process, as follows:

> The defendant additionally alleges several evidentiary errors.
> First, the defendant alleges that "important evidence" was
> withheld from him until only minutes before trial, that some
> evidence was not produced at all, and that he was not allowed
> the "use of the power of a subpoena." Defendant does not
> explain what evidence this was, why he was entitled to it, how
> his inability to acquire this evidence prejudiced him in any way,
> or who he wanted to subpoena and where it was denied in the
> record. Without more, this Court is unable to address these
> issues.

(See **State v. Waldron**, No. 2000-KA-2795, pages 17-18, (unpublished opinion). A copy

of the unpublished opinion is contained in the State Record, Vol. 1 of 3.)

Review of the State Record shows that petitioner brought the issue in the

Louisiana Court of Appeal, First Circuit via a pro se, Supplemental Brief, without detailing

his cause, as follows: "With the court's knowledge, the defense was not allowed the use of

the power of the subpoena."[23]  Petitioner next filed a nineteen page Petition for Rehearing

before the Louisiana First Circuit, wherein he claimed, *inter alia*, that Anita C. Waldron,

Brian Silversten and David Coleman were the material witnesses who could have testified

for the defense concerning the charges and the truthfulness of the victim.[24]  The Petition for

Rehearing was denied on November 16, 2001.[25]  The same issues were brought in the

Louisiana Supreme Court and were denied on January 31, 2003.[26]

The Sixth Amendment of the U.S. Constitution guarantees an accused in a

criminal prosecution the right to present a defense. **Washington v. Texas**, 388 U.S. 14, 87

S.Ct. 1920, 18 L.Ed.2d 1019 (1967). The Sixth Amendment right to compulsory process of

witnesses is applicable to the states through the Fourteenth Amendment. **Id**. There are limits,

however, to the defendant's right to use the state's process to compel the attendance of witnesses.

The U.S. Fifth Circuit has noted:

---

[23]See State Record, Vol. 1 of 3, **State v. Waldron,** No. 2000-KA-2795, 'Supplemental Brief', page 9.  Also see the Order granting petitioner's motion to file pro se brief.  State Record, Vol. 1 of 3, **State v. Waldron**, No. 2000-KA-2795 (La. App. 1st Cir, Jan. 10, 2001).  The Order gave Waldron permission to file one pro se brief, limited to ten pages.

[24]See State Record, Vol. 1 of 3, **State v. Waldron**, 2000-KA-2795, (La. App. 1st Cir.), Petition for Rehearing, pages 13-14.

[25]See State Record, Vol. 1 of 3, **State v. Waldron**, No. 2000-KA-2795, (La. App. 1st Cir. Nov. 16, 2001).  Application for Rehearing Denied.

[26]**State ex rel. Stanley Waldron v. State of Louisiana,** No. 2002-KH-0453 (La.  Jan. 31, 2003).  See State Record, Vol. 1 of 3 for copy of ruling.

> The right to compulsory process is not absolute, and a state may require that a defendant requesting such process at state expense establish some colorable need for the person to be summoned, lest the right be abused by those who would make frivolous requests.

**Hoskins v. Wainwright**, 440 F.2d 69 (5th Cir. 1971).  In **Lockett v. Blackburn**, 571 F.2d 308 (5th Cir. 1978), the court stated that a missing witnesses' testimony would ripen into a constitutional error only upon a showing that the testimony, when evaluated in the context of the entire record, would create a reasonable doubt of guilt that did not otherwise exist.

Petitioner fails to establish that any of his "material witnesses" would have testified favorably to the defense or that their testimony would have made a difference in the outcome of his trial.  In light of the overwhelming evidence of petitioner's guilt, petitioner fails to show that the missing testimony would have called his guilt into question.  Without meeting this burden, petitioner cannot show that the state's court's decision to deny relief on his compulsory process claim was unreasonable.  Petitioner's claim does not justify habeas relief.

<u>Audio Tape, Transcript and Rap Sheets</u>

Petitioner claims that the State failed to provide him with a copy of the audio tape conversation between Larry McCall and Stanley Waldron and further failed to give him a copy of the "rap sheets" of himself, Amanda McCall and Larry McCall even though the

trial court had ordered the State to provide the same.[27]  The trial court ordered the district attorney to turn over the original tape for testing by experts in the field to see if it had been altered or edited in any way.

The Louisiana First Circuit opined that this part of the claim lacked merit because Waldron failed to cite any point in the record where he requested the trial court to enforce its earlier order and the court declined to do so and because it was incumbent on Waldron to request the trial court to enforce its earlier order.[28]

Petitioner claims that he was prejudiced in his ability to present a defense because the State did not supply him with a copy of the audio tape until two weeks prior to trial and that the State gave him a copy of the transcript of the audio tape on the second day of trial.  Petitioner does not state how he was prejudiced.  He also claims that the State's failure to give him a copy of his "rap sheet" prevented him from showing that he had not been previously arrested or charged with a sexual crime.  However, petitioner testified at trial and he could have told the jury the information if he wanted to do so.  Petitioner also has failed to demonstrate that Amanda McCall and Larry McCall had "rap sheets."  Moreover, petitioner has not shown that the State withheld any impeachment material.

---

[27]See State Record, Vol. 2 of 3, Motion to Test Audio Tape, page 55 and Order, page 56. Also see Minute Entry dated October 18, 1999, page 25, State Record, Vol. 2 0f 3.

[28]See State Record, Vol. 1 of 3, No. 2000-KA-2795, page 18, (unpublished opinion)(La. App. 1st Cir., Sept. 28, 2001).

Lastly, petitioner has not demonstrated how he was prejudiced by receiving a copy of the transcript on the second day of trial as he had received a copy of the audio tape two weeks prior to trial. This claim lacks merit, as petitioner has failed to prove that a federal constitutional violation occurred.

Denial of Ability to Impeach Witnesses

Petitioner claims that he was prejudiced in his ability to present a defense during trial because of certain evidentiary rulings which denied petitioner the ability to confront and impeach the testimony of Larry McCall and Amanda McCall. Specifically, petitioner wanted to prove that Larry McCall had perjured himself concerning the fact that he claimed to have only made one copy of the audio tape. Waldron wanted to use an affidavit from a Palm Beach County Sheriff's Office which showed that the audio tape was given to the Palm Beach Sheriff on April 29, 1996.

Petitioner wanted to impeach Amanda McCall's testimony relative to her claim that Larry McCall had never abused her through the use of another Palm Beach County Sheriff's Office report. The State argues that the affidavit and offense report were hearsay and not admissible as evidence under Louisiana Law. During the trial, the prosecution objected to the admission of the affidavit[29] and the report.[30] The trial sustained the objections

---

[29]See State Record, Vol. 3 of 3, Transcript of Trial, Feb. 15, 2000, pages 580-583.

[30]**Ibid**, page 609.

23

based upon relevance and hearsay.[31]

Whether or not the trial court's evidentiary rulings concerning the use and/or admission of an affidavit and a report of the Palm Beach County Sheriff's Office were violations of state law, is irrelevant for the purpose of attaining federal habeas corpus relief. As the Fifth Circuit noted in **Castillo v. Johnson**, 141 F.3d 218, 222 and 224 (5th Cir.), cert. denied, 524 U.S. 979, 119 S.Ct. 28, 141 L.Ed.2d 788 (1988):

> [A] claim challenging the exclusion of evidence based on state law...does not afford a basis for federal habeas corpus relief. Federal habeas corpus review is limited to errors of constitutional dimension, and federal courts do not sit to review the mere admissibility of evidence under state law. **Jernigan v. Collins**, 980 F.2d 292, 298 (5th Cir. 1992), cert. denied, 508 U.S. 978, 113 S.Ct. 2977, 125 L.Ed.2d 675 (1993) .... Thus, in reviewing state court evidentiary rulings, the federal habeas court's role "is limited to determining whether a trial judge's error is so extreme that it constituted denial of fundamental fairness" under the Due Process Clause. **Andrade v. McCotter**, 805 F.2d 1190, 1193 (5th Cir. 1986) (internal quotations omitted).

In this case, the alleged evidentiary errors on the part of the trial court clearly did not constitute "denial of fundamental fairness." Accordingly, habeas corpus relief is not warranted.

### Self-Representation

Petitioner claims that his due process rights were violated when he was allowed

---

[31]**Ibid**, pages 580, 609.

to represent himself at trial. Specifically, petitioner claims that he did not render a knowing and intelligent waiver of his rights because he was not advised of the nature of the charges he was facing and of the dangers inherent in self-representation, as required under the law.

The Supreme Court clearly established the federal law regarding waiver of counsel and pro se representation in **Faretta v. California**, 422 U.S. 806, 821, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975). The Court held that an accused has a Sixth Amendment right to conduct his or her own defense in a criminal case. The Court also indicated that an accused must knowingly and intelligently waive the right to counsel.

Review of the record in the subject case shows that the trial judge conducted two formal hearings,[32] June 4, 1999 and October 18, 1999, regarding petitioner's decision to waive counsel and to proceed to trial pro se, prior to granting Waldron permission to represent himself. The trial court also appointed Attorney Robert J. Stamps as stand-by counsel at Waldron's request.[33] On December 20, 1999, the court appointed Kevin Linder as stand-by counsel.[34]

Petitioner brought his challenge regarding his self-representation waiver in his direct appeal to the Louisiana Court of Appeal, First Circuit and that Court denied the claim

---

[32]See State Record, Vol. 2 of 3, pages 297-304, Transcript dated June 4, 1999 and Vol. 2 of 3, pages 311-318 (sworn testimony of Waldron rendered).

[33]See State Record, Vol. 2 of 3, Transcript dated October 18, 1999, page 318.

[34]See State Record, Vol. 2 of 3, page 28, Minute Entry dated Dec. 20, 1999.

on the merits. **State v. Waldron**, No. 2000-KA-2795 (unpublished opinion)(La. App. 1st Cir. Sept. 28, 2001). Waldron must, therefore, prove that the state appellate court "unreasonably applied" the **Faretta v. California** test, in its review of his claim.

  The Louisiana Court of Appeal, First Circuit addressed the state and federal requisites of waiver of counsel and self-representation as follows:

> First, in two sentences, the defendant seems to object to his being allowed to represent himself below. The Sixth and Fourteenth Amendments of the United States Constitution guarantee that a person brought to trial must be afforded the right to assistance of counsel before he can be validly convicted and punished by imprisonment. **State v. Lay**, 93-1063, p. 3 (La. App. 1st Cir. 5/20/94), 637 So.2d 801, 804, writ denied, 94-2525 (La. 10/16/96), 680 So.2d 669. The Sixth Amendment further grants to an accused the right of self-representation. **State v. Carpenter**, 390 So.2d 1296, 1298 (La. 1980). Because an accused managing his own defense "relinquishes ... many of the traditional benefits associated with the right to counsel," he "must 'knowingly and intelligently' forego those relinquished benefits" in order to represent himself. **Faretta v. California**, 422 U.S. 806, 835, 95 S.Ct. 2525, 2541, 45 L.Ed.2d 562 (1975). Therefore, before an accused can choose to defend himself, he must make a knowing and intelligent waiver that shows he appreciates the possible consequences of mishandling the core functions that lawyers are more competent to perform. **Lay**, 93-1063 at pp. 3-4, 637 So.2d at 804. Although a defendant need not himself have the skill and experience of a lawyer in order to competently and intelligently choose self-representation, he should be made aware of the dangers and disadvantages of self-representation so that the record will establish he knows what he is doing and comprehends the consequences. The determination of whether there has been an intelligent waiver of right to counsel must depend, in each case, upon the particular facts and circumstances surrounding that case, including the background,

experience, and conduct of the accused. **Lay**, 93-1063 at p. 3, 637 So.2d at 804-805.

Herein, the trial court specifically stated it felt the defendant appeared to have a lot of experience with the criminal system and understood the motions and pleas and dangers of self-representation. The trial court extensively questioned the defendant about his education and employment background, advised the defendant it was almost always unwise to decline representation, and informed the defendant he would have to follow all of the procedural rules. Upon review of the record, we find the defendant knowingly and intelligently abandoned his right to be represented by counsel. The defendant was sufficiently made aware of the dangers and disadvantages of representing himself, and the record established the defendant's choice was knowingly and voluntarily made. This part of the assignment of error lacks merit.

**State v. Waldron**, No. 2000-KA-2795 (unpublished opinion)(La. App. 1st Cir. Sept. 28, 2001) pages 16-17. A copy of the opinion is contained in the State Record, Vol. 1 of 3.

Review of the state record (see footnote 32 of this Report for references to transcripts) confirms that petitioner was 44 years of age, with two years of college education and prior service as a police officer. The trial court also considered petitioner's forensic evaluation and the fact that his doctor found he had the mental ability to proceed in proper person. Petitioner was strongly warned not to proceed without counsel and was advised of the consequences of doing so. The trial court applied the appropriate federal standard regarding waiver of counsel and self-representation as mandated in **Faretta v. California, supra.** Accordingly, petitioner's claim that he did not make a knowing and intelligent waiver

of counsel and a voluntary choice to self-represent is meritless.

## Sufficiency of Evidence

Petitioner claims that his conviction should be reversed because the evidence presented at trial was insufficient to prove the essential element that the molestation of the juvenile was accomplished by use of force, violence, duress, menace, psychological intimidation, threat of great bodily harm or by use of influence by virtue of a position of control or supervision over the juvenile. Specifically, petitioner argues that the victim did not believe petitioner's threats about leaving her mother, her siblings and causing the victim to be sent to live with her father if she told anyone about the molestation; that the victim never testified that she was forced or held down or dominated in any way by Waldron; and, that the victim's explanation for her failure to report the molestation was her embarrassment.[35] Moreover, petitioner argues that the only way the State could have established the essential elements of the crime was by proving that the molestation was accomplished by the petitioner's use of his influence by virtue of a position of control or supervision over the juvenile as was alleged in the bill of information.[36]

The Supreme Court clearly established the federal law as to sufficiency of evidence claims made in petitions for habeas relief in **Jackson v. Virginia**, 443 U.S. 307,

---

[35]See Federal Record, Vol. 1 of 2, Doc. No. 2, Memorandum of Law in Support of Application for Writ of Habeas Corpus, page 15, para. 2.

[36]**Ibid**, page 15, para. 3.

28

319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1976). The **Jackson** test requires a reviewing court to

find that no rational trier of fact, after viewing the record in the light most favorable to the

prosecution, could have found all the elements of the crime proved beyond a reasonable

doubt. **Id.**, at 319. In applying the **Jackson** test, the U.S. Fifth Circuit has instructed a

reviewing court to examine "the substantive elements of the criminal offense as defined by

state law." **Dupuy v. Cain**, 201 F.3d 582, 589 (5th Cir. 2000). Under LSA-R.S. 14:81.2(D),

the critical elements of molestation of a juvenile are: variance of age of offender and the

juvenile, and the offender having control or supervision over the juvenile upon whom he

commits a lewd or lascivious act. **State v. Davis**, 514 So.2d 757 (La. App. 2nd Cir. 1987).

The indictment also charged that the molestation recurred during a period of more than one

year.[37]

       The Court of Appeal, First Circuit addressed petitioner's claim of insufficiency

of the evidence and denied relief. **State v. Waldron**, No. 2000-KA-2795, pages 4-5

(unpublished opinion)(La. App. 1st Cir., Sept. 28, 2001). Waldron must, therefore, prove that

the state appellate court "unreasonably applied" the **Jackson** test, in it's review of his

conviction. The First Circuit said:

> An essential element of the crime of molestation of a juvenile is
> that the molestation was accomplished by the "use of force,

---

[37]See pages 15-16 of this Report for the pertinent language of the Bill of Information and
for the definition of molestation of a juvenile (La. R.S. 14:81.2).

violence, duress, menace, psychological intimidation, threat of great bodily harm, or by the use of influence by virtue of a position of control or supervision over the juvenile." La. R.S. 14:81.2(A)(emphasis added). The defendant was charged with committing these improper acts by virtue of his "care, custody, control and supervision" of the victim.

In reviewing the sufficiency of the evidence to support a conviction, an appellate court is governed by the standard enunciated in **Jackson v. Virginia**, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). Under this standard, the appellate court must determine whether the evidence, when viewed in the light most favorable to the prosecution, was sufficient to convince any rational trier of fact all the elements of the crime had been proved beyond a reasonable doubt. **State v. Harris**, 97-0778, p. 1 (La. 3/4/98), 708 So.2d 387, 388.

Viewing the evidence in the light most favorable to the prosecution, we find it is more than sufficient to convince any rational trier of fact that all the elements of the crime of molestation of a juvenile were proven beyond a reasonable doubt, including that the molestation was committed by virtue of the defendant's position of control or supervision over the victim. Indeed, the defendant's assertions to the contrary are difficult to accept considering the acts of molestation allegedly started, at the earliest, when the victim was five years old and after the defendant became the stepfather.

The Statement of Fact section of this Report is adopted and incorporated into this section of this Report, as though it was fully set out. Petitioner challenges the sufficiency of the proof that he committed the improper acts by virtue of his care, custody, control and supervision of the victim.

Review of the trial transcript in this case shows that eight witnesses, including

30

the petitioner testified at trial.[38]  The victim said that Stanley Waldron started touching her in a bad way when she was about five years old.  (T. 587-589.)  When she was between seven and nine years old, Waldron's touching escalated.  Waldron began touching her legs and her vagina.  (T. 590-591.)  She would start yelling and Waldron would tell her to calm down before she would awaken her mom.  (T. 591-592.)  This happened three nights per week for more than twenty times.  (T. 592-593.)  The victim stated that she never wanted to do what Waldron did to her.  (T. 593.)  At age ten or eleven years, Waldron started touching the victim's legs with his penis.  (T. 594.)  This happened more than twenty times (T. 596) and Waldron continued making statements about splitting up the family if she told.  By age eleven to twelve, Waldron inserted his penis into the victim's vagina and tried kissing her neck.  This occurred more than twenty times.  (T. 597-599.)  When asked how the victim felt when all this was going on, she said "I was just waiting for it to be over.  I didn't know what to do about it."  (T. 598.)  Finally, at age fifteen years the victim told her biological father, Larry McCall, what had happened.  (T. 603.)  The victim said she had problems sleeping at night because of what Waldron was doing to her.  (T. 619.)

Larry McCall, the father of the victim, testified that Waldron telephoned him at work in April 1996, and that the conversation was recorded.  The tape recorded

---

[38]See State Record, Vol. 3 of 3, Transcript of trial taken on February 15, 2000, pages 518-667.

conversation was played for the jury and a copy of the transcript is contained in the State Record, Volume 2 of 3, phone conversation on April 13, 1996, Larry McCall and Stanley Waldron, pages 211 - 225, hereinafter referred to as S ___. Waldron said that he had sexual relations with the victim six times over a two year period. (S. 214.) Waldron also said that the victim was never raped or forced to do anything. (S. 224.) However, he indicated that from the "legality of the law at her age, it is rape regardless if she consented or not"... (S. 224).

Waldron testified and he denied sexually abusing the victim (T. 653) and claimed that he tried to be a father figure to the victim (T. 654). Waldron admitted telling Larry McCall basically what was going on. They had a short and heated discussion (T. 660). Larry McCall pressed charges in Florida and in Louisiana (T. 661). Moreover, Waldron denied that the voice on the taped conversation was his (T. 663).

The jury heard the evidence and was instructed relative to the applicable law and made credibility determinations. A reviewing habeas court does not revisit determinations of credibility for such determinations are properly the province of the jury. **Pemberton v. Collins**, 991 F.2d 1218, 1225 (5th Cir. 1993), cert. denied, 114 S.Ct. 637, 126 L.Ed.2d 596 (1993). The jury had sufficient evidence presented to it to decide that petitioner was guilty of the molestation of the juvenile as charged in the bill of information. Having concluded that the state court reasonably applied **Jackson** when it assessed petitioner's

insufficiency of evidence claim, this court finds petitioner's claim is meritless.

## RECOMMENDATION

**IT IS RECOMMENDED** that petitioner's application for <u>habeas</u> <u>corpus</u> relief be **DENIED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within 10 days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. **Douglass v. United Services Auto. Ass'n**, 79 F. 3d 1415, 1430 (5th Cir. 1996).

New Orleans, Louisiana, this 5th day of November, 2003.

LOUIS MOORE, JR.
United States Magistrate Judge

33